IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| URS CORPORATION and URS GROUP, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| | : | |
| TRISTATE ENVIRONMENTAL | : | |
| MANAGEMENT SERVICES, INC.; TRISTATE | : | |
| PROBING/DRILLING SERVICES, INC.; and | : | |
| INDIAN HARBOR INSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | NO. 08-154 |

**MEMORANDUM RE: INDIAN HARBOR'S MOTION TO DISMISS**

**Baylson, J.**                                                                 **July 28, 2008**

**I.     Introduction**

Plaintiffs URS Corporation and URS Group, Inc. (collectively, "URS") seek indemnification and defense from Defendant Indian Harbor Insurance Company ("Indian Harbor"), because they have been sued for negligence in a separate legal action.[1] URS was sued because it was allegedly negligent in supervising a drilling project which caused damage to underground cables. URS's subcontractors, Defendants TriState Environmental Management Services, Inc., and Tristate Probing/Drilling Services, Inc. (collectively "TriState"), which conducted the actual drilling, had an insurance policy with Indian Harbor under which URS alleges it was an additional insured. URS contends that Indian Harbor has breached its

---

[1] See National Rail Passenger Corp. v. URS Corp., C.A. 05-4175, also before the undersigned.

agreement to indemnify and defend URS pursuant to that policy.

**II.    Background**

    **A.    Underlying Claim Against URS**

URS was the project manager for an environmental remediation project that included significant drilling. As noted above, URS subcontracted the drilling operations to Tristate. On August 7, 2003, the drilling hit underground cables belonging to National Railroad Passenger Corporation ("Amtrak"). Amtrak contends that the drilling caused substantial damages, and filed an action for negligence against both URS and Tristate. As a result of the allegations against it, URS turned to Indian Harbor for indemnification and defense.

    **B.    Tristate's Insurance Policy With Indian Harbor[2]**

According to the pleadings, Tristate's contract with URS required that it name URS as an "additional insured" for certain parts of its insurance policy, and Tristate did so. URS attached the policy at issue to the Complaint, and Indian Harbor also attached the policy to its Motion to Dismiss.

The policy may be divided into three distinct components. The first, entitled "Pollution Protection Package Policy Declarations", sets forth specific aspects of the agreement between Indian Harbor and Tristate, mostly financial, such as the applicable premium and the coverage limits. The second component consists of eight endorsements, each of which is a modification of the general terms of the Pollution Protection Package. The third component is the general Pollution Protection Package, which was submitted by Indian Harbor and not by URS, but which

---

[2] Unless otherwise specified, any discussion of a policy in this memorandum will refer to Tristate's insurance policy with Indian Harbor.

may nevertheless form part of the Court's analysis.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

The general Pollution Protection Package provides five kinds of coverage:  Coverage A, for bodily injury and property damage liability (hereinafter "general liability"); Coverage B, for personal and advertising injury liability; Coverage C, for medical payments; Coverage D, for professional liability; and Coverage E, for contractor's pollution legal liability.  The parties agree that URS was named as an "additional insured" under Coverage A, for general liability.

The eight endorsements appear to have been specifically negotiated for the purposes of the environmental remediation project at issue.  Endorsement #001 of the policy defines "Professional Services" as "Environmental consulting services."  It reads as follows:

> This Policy applies to a "claim" based upon or arising out of the following "Professional Services" or "Contracting Services" only:
> Professional Services:
>     Environmental consulting services
> Contracting Services:
>     Environmental drilling and probing activities

Def. Ex. B, Endorsement #001.

The general terms of the Pollution Protection Package, however, use the term "professional services" much more broadly.  The professional liability exclusion from general liability coverage reads as follows:

> "Bodily injury" or "property damage" arising out of the rendering or failure to render *any professional service, including but not limited to* (1) The preparing, approving or failure to prepare or approve maps, drawings, opinions, recommendations, reports, surveys, change orders, designs or specifications; (2) *Supervision, inspection, construction or project management, quality control or engineering services*; (3) An error, omission, defect or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any "insured"; or (4) The reporting of or reliance upon any such test, evaluation,

consultation or advice.

Def. Ex. B, Section I(A)(2)(p) (emphasis added).

### C. Procedural History

After the August, 7, 2003 drilling incident, Amtrak sent letters to Tristate and URS, informing them that it would seek payment for the damage to its underground cables. On September 3, 2003, URS sent a letter to both Tristate and Indian Harbor stating that it would look to them for indemnification and defense. Indian Harbor denied coverage to URS under the Tristate policy currently at issue. URS filed the Complaint in the instant case on January 8, 2008, and Indian Harbor moved to dismiss the action for failure to state a claim.[3]

## III. Parties' Contentions

### A. URS

URS argues that pursuant to its status as an "additional insured" for general liability (i.e. Coverage A) on Tristate's policy, Indian Harbor has a duty to defend URS against Amtrak's claims and should agree to indemnify URS should URS be found liable for damages to Amtrak. URS argues that Amtrak's claims against it are not professional liability claims, and that in fact, Amtrak can not even try to prove professional negligence because it is precluded from introducing expert testimony against URS.[4]

---

[3] Tristate did not move to dismiss the instant action, but filed an Answer to URS's claims on February 22, 2008 (Doc. No. 10). This memorandum is therefore limited to the dispute between URS and Indian Harbor as to the sufficiency of URS's claims against Indian Harbor.

[4] In National Rail Passenger Corp. v. URS Corp., C.A. 05-4175, URS moved to dismiss Amtrak's claims against it on the grounds that they were professional liability claims and that Amtrak had failed to furnish the Certificate of Merit (COM) that Pennsylvania law requires for such claims. Amtrak responded that in fact, its claims against URS were for general liability, not professional liability. To determine the nature of Amtrak's claims, the Court ordered Amtrak to

URS contends that although the general liability provision in Coverage A contains a professional liability exclusion, it does not contain a similar exclusion for "Contracting Services" and Amtrak's negligence claim against URS arose out of Tristate's "Contracting Services," defined as "Environmental drilling and probing activities".

B.  **Indian Harbor**

Indian Harbor takes the position that URS was not named as an additional insured for purposes of professional liability, and that professional liability insurance is the only potential coverage for the claims against URS in the Amtrak Complaint. Indian Harbor also argues that the Certificate of Insurance does not confer any rights on URS.

According to Indian Harbor, because the general liability provision excludes professional liability, the general liability coverage does not apply to Amtrak's claims against URS. Indian Harbor contends that the policy's definition of "contracting services" does not relate to general liability coverage (Coverage A) but only to pollution legal liability coverage (Coverage E.)

Indian Harbor argues that Amtrak's inability to introduce expert testimony against URS is of little relevance. According to Indian Harbor, the assessment of whether Amtrak alleges general or professional liability must be confined to Amtrak's Complaint only. Indian Harbor contends that according to Amtrak's Complaint, URS was performing professional services when the damage to Amtrak's cables occurred, and that any coverage of URS would have to be

---

state whether it intended to introduce expert testimony at trial, since expert testimony is generally necessary to establish professional liability. Amtrak stated that it would not introduce expert testimony at trial, indicating that it would not be pursuing professional liability claims. The Court denied URS's Motion to Dismiss on that basis, effectively precluding Amtrak from introducing expert testimony. See National Rail Passenger Corp. v. URS Corp., C.A. 05-4175, Doc. No. 73.

professional liability coverage. Thus, according to Indian Harbor, its policy with Tristate does not provide URS with professional liability coverage, so it is not obligated to indemnify and defend URS.

## IV. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to state a valid complaint a plaintiff must make a "showing" that is more than just a blanket assertion that he is entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). "We caution that without some factual allegation in a complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also 'grounds' on which the claim rests." Id. (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 n. 3 (2007).

## V. Discussion

The crux of Indian Harbor's arguments is that its policy with Tristate does not extend coverage to URS for the claims Amtrak asserts against URS because those claims necessarily constitute professional liability claims. The Court finds that the policy's definition of professional services is ambiguous in the context of the facts, and therefore must interpret the policy in favor of the insured, URS, at this stage of the case. As a result, as discussed in greater

detail below, Indian Harbor's Motion to Dismiss will be denied.

### A. Interpretation

Under well-established principles of contract interpretation, determining whether a contract provision is ambiguous is a question of law. Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421 (3d Cir.1999). The general rules of contract interpretation apply to insurance policies, and indeed, "[a]n insurance policy is a contract and stands on no different grounds than any other contract." Nationwide Mut. Ins. Co. v. Johnson, 676 A.2d 680, 684 (Pa. Super. 1996) (citing Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920 (Pa. 1987)).[5]

"Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). A contract will be found to be ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." Metzger v. Clifford Realty Corp., 327 Pa.Super. 377, 476 A.2d 1, 5 (Pa. Super. 1984). Determining whether a contract is ambiguous is a matter of law; however assessing the parties' intent to resolve ambiguities is a matter reserved for the fact finder. Id.

### B. Ambiguity

The parties agree that URS is an "additional insured" under Tristate's Policy with Indian Harbor for general liability coverage, which consists of property damage and bodily injury

---

[5] As this is a diversity case, the Court applies Pennsylvania law.

coverage, and which contains a professional liability exclusion. The relevant question becomes whether URS seeks from Indian Harbor general liability coverage that qualifies as professional liability coverage and would therefore be excluded.

Considering the Complaint in the light most favorable to Plaintiff, the policy is potentially ambiguous as to the definition of professional services and consequently as to the scope of professional liability coverage. The first way to interpret the policy, advanced by URS, focuses on the definitions in Endorsement #001. According to URS, because of those definitions, the professional liability exclusion only applies to liability for environmental consulting services, and since there is no exclusion for "Contracting Services", coverage extends to such services, defined as "Environmental drilling and probing activities".[6]

For URS' analysis to make sense, Amtrak's claims against URS must arise out of "Environmental drilling and probing activities", and after reviewing Amtrak's Complaint, the Court concludes that they do. Amtrak's Complaint asserts that URS was negligent in its maintenance, operation, and supervision, inter alia, of the drilling project that caused damage to

---

[6] The Court finds no support for Indian Harbor's argument that Endorsement #001's definitions of "Professional Services" and "Contracting Services" only apply to the Pollution Legal Liability Coverage (Coverage E). Endorsement #001 states that it forms part of Policy No. 000091003, which encompasses the five types of coverage discussed above (Coverage A – Coverage E). See Compl. Ex. B., p. 2. Furthermore, Endorsement #001 states that it modifies insurance provided by the "Pollution Protection Package," which is the overall title of the document outlining the five types of coverage discussed above (Coverage A – Coverage E.) In the Complaint, URS alleges Policy No. 000091003 as the policy pursuant to which it seeks coverage, Compl. ¶ 17, and nothing in Endorsement #001 suggests that the definitions contained therein only apply to Pollution Legal Liability Coverage (Coverage E). Despite Indian Harbor's argument, a plain reading of the policy itself indicates that the definitions of "Contracting Services" and "Professional Services" apply to the policy as a whole. A comparison of Endorsement #001 and Endorsement #004 reinforces the Court's conclusion, since Endorsement #004 specifies that it applies to Coverage D and Coverage E, but Endorsement #001 contains no such specification.

Amtrak's underground cables.[7]  Although Amtrak's allegations are broadly worded, they focus on property damage and on URS' duties with respect to the drilling that caused the property damage.  The Court finds that Amtrak's claims do arise out of URS' "Environmental drilling and probing activities" (i.e. "Contracting Services") and would thus be covered under the policy as URS suggests it should be interpreted.

However, there is a second way of interpreting the policy's coverage of professional services.  According to Indian Harbor, the proper focus is on the wording of the professional liability exclusion from general liability coverage as set forth in the general terms of the Pollution Protection Package, quoted above.  Indian Harbor argues that Amtrak's claims are precisely the kind of claims described by this professional liability exclusion and are thus not covered.  Under Indian Harbor's interpretation of the policy, URS is not insured under general liability coverage for Amtrak's claims against it, presumably because the claims are for "supervision", "project management", or "engineering services".

The Court finds that the policy's treatment of professional services is ambiguous.  Applying Endorsement #001's definition of "Professional Services" as "Environmental consulting services" to the professional liability exclusion would render the exclusion's broad scope meaningless.  Since at the motion to dismiss stage, the Court must interpret an ambiguous insurance policy in favor of the insured, Madison Constr. Co., 735 A.2d at 106, the Court will deny Indian Harbor's Motion to Dismiss.

The Court is also mindful of the general principle that specifically-negotiated terms trump general terms in contract interpretation.  See Baltic Dev. Co. v. Jiffy Enterprises, Inc., 257 A.2d

---

[7] See National Rail Passenger Corp. v. URS Corp., C.A. 05-4175, Doc. No. 1.

541, 543 (Pa. 1969). Endorsement #001's definitions appear to have been drafted in specific reference to the environmental drilling project at issue, whereas the professional liability exclusion appears to be part of Indian Harbor's general Pollution Protection Package. The principle that the specific controls the general reinforces the Court's conclusion that for present purposes, it must find in favor of URS. As discussed above, resolving ambiguities and determining the intent of the parties are issues appropriately reserved for the fact-finder.

**VI.     Conclusion**

For the reasons stated above, the Court has denied Indian Harbor's Motion to Dismiss. An appropriate order was issued on July 18, 2008 (Doc. No. 24).

A:\08-154 Memo re Indian Harbor's MTD.wpd